A. S. PRICE ET AL. v. SOUTHERN RAILWAY COMPANY.

(Filed 18 April, 1917.)

1. Carriers of Goods—Connecting Lines—Carriers by Water—Negligence—Commerce—Federal Statutes—Loss of Vessel.

Where loss or damage is caused an interstate shipment of goods by a connecting carrier by water in its designated or usual route of shipment, and suit is brought in the State court having jurisdiction of the parties and subject-matter to recover therefor against the initial carrier by rail, the defendant may avail itself of the defenses under the Federal statute (34 St. at Large, 594) limiting liability in case of carriers by water, where the same properly applies; and where it is shown on behalf of the defendant that the carrier by water undertook the transportation of the goods upon a seaworthy vessel, properly manned and equipped, and that the vessel with the cargo was an entire loss, without privity or knowledge of the owner or owners, a recovery for such loss will be denied.

2. Same—Verdict—Inconsistency—Interpretation.

*Held,* on the present record, and having due regard to the pleadings, testimony, and charge, there is no such conflict in the issues as to prevent the defendant from securing his judgment on the verdict.

CIVIL ACTION, tried before *Long, J.,* and a jury, at January term, 1915, of ROCKINGHAM.

The action was to recover for the loss of certain goods delivered to defendant as initial carrier, at Reidsville, N. C., and consigned for shipment to Shoninger Bros., New York City, title to remain in conveyor till delivery and receipt, etc., said goods having been lost on the route.

There was denial of liability on part of defendant company and allegation by way of defense and proof tending to show that the goods in question were shipped over the usual route for such shipments, by way of Norfolk, Va., and thence with the Old Dominion Steamship Company, a connecting carrier; that they were sent by the latter company on their steamer *Monroe,* a seaworthy vessel in all respects, properly manned and equipped for the purpose, and the steamer was sunk on the voyage, in collision with the steamer *Nantucket* of the Merchants and Miners Transportation Line, and the same with cargo was a total loss, no freight being earned, etc.

On issues submitted, the jury rendered the following verdict:

1. Was loss of the goods caused by the default or conduct of those in charge of the steamship *Monroe?* Answer: "Yes."

2. Was the steamship *Monroe* a seaworthy vessel, properly equipped and manned? Answer: "Yes."

3. Was the steamship *Monroe* and its cargo lost at sea? Answer: "Yes."

4. Was there any part of the cargo, save an unsubstantial amount in value, salvaged? Answer: "No."

5. In what sum, if any, is the defendant indebted to the plaintiff? Answer: $210.99 and interest."

Judgment on verdict for defendant, and plaintiff excepted and appealed.

*J. M. Sharp for plaintiff.*
*Manly, Hendren & Womble for defendant.*

HOKE, J. The disposition of the present appeal, in its principal features, is determined by the decision of this Court in *Brinson v. R. R.,* reported 169 N. C., 425. In that case it was held, among other things, that an initial carrier sued under the provisions of the Federal Statute of 29 June, 1906, 34 Statutes at Large, 594, for the loss or damage to a shipment by reason of the default of a connecting carrier, could avail itself of any defense existent in the latter's favor, and that where such shipment by a designated or usual route was in part by water, the Federal statute as to limitations of liability, in case of carriers by water, could in proper instances be set up and relied upon, citing in support of the position, among other cases, the *Hoffman,* 171

Fed., 455; *Riverside Mills v. R. R.* 168 Fed., 987; *Ford v. S. S. Co.,* 4 Sawyer, 292; *same case,* 15 Fed. Cases, No. 8506. Speaking to these authorities in *Brinson's case,* the Court said: "On this question, in *Riverside Mills v. R. R.,* it was held: 'In an action by the shipper against an initial carrier for loss of goods shipped in interstate commerce, under amendment to Hepburn Act of 29 June, 1906, the carrier may make any proper defense which can be made in a court of law and which any connecting carrier on the line of which the goods were lost or the injury occurred might make.' And in the case of *Lord v. Goodhall, supra,* it was held, among other things, that 'A party using for the transportation of his goods, an instrument of commerce which is subject to the regulating power of Congress must use it subject to all the limitations imposed upon its use by Congress.' Both of these causes were affirmed, on writ of error, in Supreme Court of the United States; the first in *R. R. v. Riverside Mills, supra,* and the second in *Lord v. Goodhall,* 102 U. S., 541. The deliverance of the higher Court, however, dealt with other, chiefly constitutional, questions, and the precise point we are discussing was not directly presented; but, as stated, from the language of the statute and the fact that recovery over is allowed the initial carrier, and from the reason and justice of the position we are well assured that the lower Federal courts have taken the correct view, and that in case of loss by sea the initial carrier may avail itself of these Federal statutes where the same properly apply." It was further held, in the decision, that in cases coming properly under these provisions of the Federal laws, 3 Compiled Statutes, 1901, ch. 6. sec. 4283-4289 (erroneously printed in *Brinson's case* as 5 Compiled Stat., 1913), where there was a total loss of vessel, cargo, and freight, "without privity or knowledge of the owner or owners," that ordinarily no recovery could be had, the statute in such cases limiting liability to the owners to the amount or value of their interest in the vessel. On this subject it was said: "These laws, being chapter 5, Laws 1913 (correct by 3 Laws 1901, ch. 6), classified in United States Compiled Statutes under section 4289, p. 2946, by which the owner of a vessel is relieved of responsibility, under certain conditions, by reason of faulty navigation and other specified causes, and section 4283 of the same volume, by which the liability of the owner is restricted to the "value of his interest in the vessel and its freight then pending, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of such owner or owners," etc., have been many times

construed by the Supreme Court of the United States, and it is very
generally recognized that defenses existent by reason of the statutes may
be made available in a State court having cognizance and jurisdiction
of the cause of action, *R. R. v. Wallace,* 223 U. S., 481; *Riverside Mills
v. R. R.,* 168 Fed., 1987; and in reference to the last mentioned section,
that on limitation of liability, it is held, in *Norwich v. Transportation
Co.,* 118 U. S., 468; *Norwich v. Wright,* 13 *Wallace,* 104, and other
cases, the value of the vessel must be estimated after the collision, and
in case the vessel is then sunk and no freight earned, there is usually
an end of liability on the part of the owners." In the case to which we
have referred a recovery by plaintiff was sustained, but this was for
the reason that, on a "case agreed," it was not made to appear that the
vessel in question was seaworthy or properly manned or equipped,"
a condition required for the operation of the Federal statutes in ques-
tion; but, in the present suit the defendant, assuming the burden of this
position, as required by the law, has alleged and proved that the ship
in this instance was both seaworthy and properly equipped, and that
the vessel with the cargo was an entire loss," and, under the principles
approved in our former decision, we must hold that no recovery by
plaintiff can be had for this loss.

It was objected for plaintiff that there was conflict in the findings of
the jury and, on that account, the verdict should be set aside and a new
trial allowed. "It is the recognized position with us that a conflict in
a verdict on essential and determinative issues will vitiate it"; but it
is also held that a verdict should be liberally and favorably construed
with a view of sustaining it if possible, and that to this end it may be
interpreted and allowed significance by reference to the pleadings, the
testimony, and the charge of the court." *Reynolds v. Express Co.,* 172
N. C., 487. Considering the present verdict in the light of these prin-
ciples, we do not discover any material conflict in the findings of the
jury. As to the verdict on the fifth issue, though in the form of an in-
debtedness, it was only entered for the purpose of ascertaining the
amount in case the court should rule with plaintiff on the question of
liability. We do not understand that plaintiff's exception was addressed
to that issue. And in reference to the alleged conflict in the responses
to the first and second and third issues, the Federal statute, limiting
liability to the value of the ship or the owner's interest therein, applies
to all loss, damage, or injury, by collision, etc., "without the privity or
knowledge of the owner." While this qualification includes the owner's
default in not supplying a seaworthy vessel in the first instance, this
being a primary and nondelegable duty, it does not extend to errors in
navigation or other negligence on the part of the crew that may be

committed on the voyage and in which the owner does not share and of which he is necessarily ignorant. In *Lord v. Goodhall,* 4 Sawyer *supra,* the correct principle, we think, is stated as follows: "The owner is bound to exercise the utmost care in the selection of a competent master and crew, and in providing a vessel in all respects seaworthy; and if by reason of any neglect or fault in these particulars a loss occurs, the owner is in privity within the meaning of the statute. If the owner exercises due care in the selection of the master and crew, and in providing a seaworthy vessel, and a loss afterwards occurs, without his privity or knowledge, through the negligence of the master or crew, or from some secret defect in the ship or its equipments, which could not have been discovered or avoided by the exercise of proper care on his part, the owner's liability is within the limitation of the statute. Where a vessel is properly officered and manned, and in all respects seaworthy, when she leaves port, and a loss occurs from the subsequent negligence of the master or crew, or from other causes arising during the voyage, without the privity or knowledge of the owner, the owner's liability is within the limitations prescribed by the statute."

Interpreting the verdict in reference to these positions, it is clear that the steamship *Monroe,* on which these goods were shipped, was a seaworthy vessel, properly manned and equipped for the voyage, and the default established by the response to first issue refers to errors in navigation or neglect on the part of the crew while the voyage was in the course of performance. This is not only the permissible and natural interpretation of the verdict as rendered, but it was admitted on the argument that the only evidence offered or claimed on the trial was of default in the way the vessel was managed or navigated at the time of the collision.

There is, therefore, no necessary conflict in the issues, and in the verdict in response to the second and third issues the judgment for defendant must be affirmed.

No error.